**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

BRAVO PIZZA ENTERPRISES, INC.,                    Case No.: 23-cv-04540-HG

*Plaintiff,*

-against-

YOSSEF AZIZO
KOSHER BRAVO PIZZA LLC,

*Defendants.*

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

McLaughlin & Stern, LLP
260 Madison Avenue
New York, New York 10016
(212) 448-1100
*Attorneys for Defendants*

{N0623674.1}

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 1

    *(a)*   *The Bravo Pizzeria in Sullivan County* ........................................................ 1

    *(b)*   *The Bravo Pizzeria in Brooklyn* ................................................................ 1

LEGAL ARGUMENTS ..................................................................................................... 3

    A.    This Action Should be Dismissed and/or Stayed based on the *Colorado River* Doctrine ............................................................................................................. 3

    B.    Plaintiff is Not Likely to Succeed on the Merits ............................................. 5

    C.    Plaintiff has an Adequate Remedy at Law and Will Not Suffer Irreparable Harm ...... 6

    D.    The Equities Favor Defendants ....................................................................... 7

    E.    Plaintiff Agreed to Arbitrate its Claims ......................................................... 7

CONCLUSION ................................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York*,
762 F.2d 205 (2d Cir. 1985) ...................................................................................... 5

*Carvant Fin. LLC v. Autoguard Advantage Corp.*,
958 F. Supp. 2d. 390 (E.D.N.Y. 2013) ...................................................................... 7

*Colonial Radio Corp. v. Colonial Television Corp.*,
78 F. Supp. 546 (S.D.N.Y. 1948) .............................................................................. 8

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ................................................................................................ 3-5

*Consol. Brands, Inc. v. Mondi*,
638 F.Supp. 152 (E.D.N.Y.1986) .............................................................................. 6

*Country Fare LLC v. Lucerne Farms*,
No. 3:11CV722 VLB, 2011 WL 2222315 (D. Conn. June 7, 2011) ......................... 9

*Dittmer v. Cty. of Suffolk*,
146 F.3d 113 (2d Cir. 1998) ...................................................................................... 3

*Great South Bay Med. Care, P.C. v. Allstate Ins. Co.*,
204 F. Supp. 2d 492 (E.D.N.Y. 2002) ....................................................................... 3

*Herskovic v. Verizon Wireless*,
No. 19-cv-3372, 2020 WL 1083716 (E.D.N.Y. Mar. 6, 2020) .................................. 7

*Holick v. Cellular Sales of N.Y., LLC*,
802 F.3d 391 (2d Cir. 2015) ...................................................................................... 8

*Jon Devlin Dancercise, Inc. v. Dancersize, Inc.*,
525 F. Supp. 973 (S.D.N.Y. 1981) ............................................................................ 9

*LaRubInt Corp. v. Joint Stock Co. Studio Soyuzmultfilm*,
No. 22-CV-4461 (HG), 2023 WL 3020564 (E.D.N.Y. Apr. 20, 2023) ..................... 8

*Mazuma Holding Corp. v. Bethke*,
1 F. Supp. 3d 6 (E.D.N.Y. 2014) ............................................................................... 3

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
460 U.S. 1 (1983) ....................................................................................................... 3

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
673 F.3d 84 (2d Cir. 2012) ......................................................................................... 4

*Phillips v. Citibank, N.A.*,
    252 F. Supp. 3d 289 (S.D.N.Y. 2017) ...................................................................... 5

*Potente v. Capital One, N.A.*,
    No. 16-CV-3570, 2018 WL 1882848 (E.D.N.Y. Apr. 19, 2018) ................................ 4

*Ryan v. Volpone Stamp Co.*,
    107 F. Supp. 2d 369 (S.D.N.Y. 2000) ...................................................................... 6

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ........................................................................................ 6

*Sitgraves v. Fed. Home Loan Mortg. Corp.*,
    265 F. Supp. 3d 411 (S.D.N.Y. 2017) ...................................................................... 5

## PRELIMINARY STATEMENT

As set forth more fully below, Plaintiff's motion for a preliminary injunction should be denied because (a) this action is barred by the *Colorado River* doctrine, (b) Plaintiff is not likely to succeed on the merits, (c) Plaintiff has an adequate remedy at law and will not suffer irreparable harm, (d) the equities favor the Defendants and some of Plaintiff's claims are moot, and (e) Plaintiff agreed to arbitrate its claims against the Defendants.

## STATEMENT OF FACTS

Defendant Yossef Azizo owns Kosher Bravo Pizza LLC, a company that owns two kosher pizzerias – one in Sullivan County, the other in Brooklyn.  Only the pizzeria in Brooklyn currently does business under the name "Bravo Pizza"/"Bravo Kosher Pizza", the trademarks owned by Plaintiff and recently registered on the principal register on January 31, 2023.

### (a)    The Bravo Pizzeria in Sullivan County

By way of a verbal agreement, Plaintiff permitted Defendants to use its trademarks for Defendants' pizzeria in Sullivan County since 2016.  Plaintiff has not alleged the terms of the verbal agreement.  Regardless, the issue is now moot because Defendants no longer uses the Bravo Pizza name or trademarks at this location.

### (b)    The Bravo Pizzeria in Brooklyn

Unlike the Sullivan County location, the Brooklyn location is governed by a written license agreement dated February 1, 2019.  This agreement permits the Defendants to use Plaintiff's trademarks for five years (until January 31, 2024) at 902 Kings Highway in exchange for a licensing fee.

Defendants invested hundreds of thousands of dollars into branding the Bravo Pizza location in Brooklyn in reliance on the License Agreement.  For more than 4 ½ years, they purchased and maintained a Bravo Pizza website, store signage, custom pizza boxes, napkins,

{N0623674.1}

advertisements, menus, etc.  Defendants also hired employees, entered into vendor contracts, and established a loyal customer base using the Bravo mark.  In December 2022, they fell behind in making certain licensing fee payments to Plaintiff for this location.  However, earlier this month (July 2023) they informed Plaintiff that they are now ready, willing and able to pay all outstanding licensing fees for this location, but they have not heard back from Plaintiff.  They sent post-dated checks to Plaintiff, at Plaintiff's request, but Plaintiff refuses to cash them.

Defendants will suffer extreme prejudice if the requested injunction is granted regarding this location because they maintained this Brooklyn pizzeria for 4 ½ years under "Bravo Pizza" and invested hundreds of thousands of dollars into this business.  In addition, they still have several months left on the written license agreement. Although Plaintiff argues that it terminated the license agreements on May 24, 2023, Defendants respectfully disagree.

Defendants still have 7 months left on the Brooklyn location because the License Agreement was never properly terminated pursuant to its terms.  As relevant here, the agreement may only be terminated for two reasons – one, failure to pay the licensing fee with a 7-day notice to cure period; or, two, 30-days written notice of termination.  Here, neither occurred nor is alleged. Plaintiff did not give the Defendants a formal 7-day written notice with an opportunity to cure. Even if it did, Defendants provided post-dated checks to the Plaintiff but Plaintiff refused to cash them.  Plaintiff also failed to give Defendants a formal 30-days' written notice of termination -- Plaintiff simply terminated the license agreements "effective immediately" on May 24, 2023.

Finally, Defendants prior use of "Bravo Kitchen" and/or "Bravo Bagel" does not violate Plaintiff's trademarks for "BRAVO PIZZA" or "BRAVO KOSHER PIZZA".  Defendant no longer uses the name "Bravo Kitchen" or "Bravo Bagel" so the issue is moot.  In any event, Plaintiff admittedly does not own any trademark for "Bravo Kitchen" or "Bravo Bagel."  Indeed,

both of Plaintiff's trademark registrations filed on January 31, 2023 specifically state that they are for "*pizzerias*." *See,* Fellus Decl. at Exhibits "A"-"B". There is no allegation or proof that either Bravo Kitchen or Bravo Bagel operate as a pizzeria. Similarly, both registrations state that "THE MARK CONSISTS OF STANDARD CHARACTERS **WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR.**" *Id.* (bold emphasis added). Defendants now operate this space under the name "Yossi's Bagels."

## <u>LEGAL ARGUMENTS</u>

### A. This Action Should be Dismissed and/or Stayed based on the *Colorado River* Doctrine

The Supreme Court has held that a federal court may abstain from exercising jurisdiction over a case when there is a pending parallel state court proceeding and certain factors weigh in favor of abstention. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 819 (1976). The decision of whether to stay or dismiss the federal suit under *Colorado River* abstention lies within the court's discretion. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 19 (1983).

"Lawsuits are considered 'parallel' if 'substantially the same parties are contemporaneously litigating substantially the same issues' in different forums." *Great South Bay Med. Care, P.C. v. Allstate Ins. Co.*, 204 F. Supp. 2d 492, 496 (E.D.N.Y. 2002)(quoting *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). "Perfect symmetry of parties and issues is not required." *Potente v. Capital One, N.A.*, No. 16-CV-3570, 2018 WL 1882848, at *4 (E.D.N.Y. Apr. 19, 2018)(citation and internal quotation marks omitted). "Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 20 (E.D.N.Y. 2014) (internal citations omitted).

If the proceedings are parallel, courts generally consider the following six factors:

(1)     whether the controversy involves a *res* over which one of the courts has assumed jurisdiction;

(2)     whether the federal forum is less convenient than the other for the parties;

(3)     whether staying or dismissing the federal action will avoid piecemeal litigation;

(4)     the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other;

(5)     whether federal law provides the rule of decision; and

(6)     whether the state procedures are adequate to protect the plaintiff's federal rights.

*See, Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100–01 (2d Cir. 2012).

Here, the state court action and this action are parallel.  They involve the same parties and the same subject matter – the alleged breach of two license agreements.  Plaintiff seeks to litigate substantially the same issues in both forums – whether Defendants violated the license agreements/trademarks and the resulting damages therefrom.   Although Plaintiff seeks an injunction and asserts federal claims in this action, the claims asserted in parallel actions need not be identical for the *Colorado River* doctrine to apply.  *Sitgraves v. Fed. Home Loan Mortg. Corp.*, 265 F. Supp. 3d 411, 413 (S.D.N.Y. 2017).

Applying the *Colorado River* factors here:

First, there is no particular *res* over which one of the courts has assumed jurisdiction.

Second, the federal forum is less convenient because Defendants will have to simultaneously litigate in state and federal courts.  *Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 299 (S.D.N.Y. 2017)(finding neutrality in inconvenience weighs in favor of abstention because "there is plainly inconvenience in having to litigate actively in both state and federal courts at the same time.")

Third, staying or dismissing the federal action will avoid piecemeal litigation because the state court action involves substantially the same issues between the same parties and seeks similar relief.    Maintaining   these   parallel   proceedings   would   "waste   judicial   resources   and   invite duplicative effort," this factor weighs in favor of abstention.  *See Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York,* 762 F.2d 205, 211 (2d Cir. 1985) (noting that "the danger of piecemeal litigation is the paramount consideration").

Fourth, Plaintiff filed the state court action several months before the within action, issue is joined in the state court action and a demand for a deposition was previously filed therein. Plaintiff, in its state court pleading, also reserved the right to seek money damages through the date of final judgment therein.

Fifth, both federal law and state law provides the rules of decision because Plaintiff has asserted claims under both federal statutory law and state common law.

Sixth, state procedures are adequate to protect the Plaintiff's federal rights because the state courts have concurrent jurisdiction over Plaintiff's claims under the Lanham Act.  *Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 395 (S.D.N.Y. 2000)(since a federal court's jurisdiction over Lanham Act claims is concurrent with that of the state courts, this factor does not weigh heavily in favor of the exercise of federal jurisdiction.)

Accordingly, the application of the six *Colorado River* factors weigh in favor of dismissal and/or a stay.

### B.    Plaintiff is Not Likely to Succeed on the Merits

Plaintiff is not likely to succeed on its claims because it never properly canceled the License Agreement.  The license agreement could only be terminated by a formal 7-day written notice to cure or a formal 30-day written notice of termination.  Here, neither occurred nor is alleged.

Plaintiff did not give Defendant a formal 7-day written notice with an opportunity to cure.  Plaintiff also failed to give Defendants a formal 30-days' written notice of termination.  Plaintiff simply terminated the licensing agreements "effective immediately" on May 24, 2023 in violation of the license agreement.  Further, Defendants gave Plaintiff post-dated checks but Plaintiff refused to cash them.

Plaintiff is also unlikely to succeed on its claims regarding "Bravo Kitchen" or "Bravo Bagel" because its trademarks admittedly do not include the words "bagel" or "kitchen".  Plaintiff's trademark registrations specifically state that they are only for "pizzerias" and do not include "any particular font style, size or color."

## C.   Plaintiff has an Adequate Remedy at Law and Will Not Suffer Irreparable Harm

Plaintiff has an adequate remedy at law and, in fact, has asserted claims at law in both the New York action and this action.  If Plaintiff prevails, it will receive the license fees due under its verbal and written licensing agreements with the Defendants.

Plaintiff will not suffer irreparable harm because (a) Defendants are not using the Plaintiff's trademarks at the Sullivan County location, (b) there is only 7 months left on the license agreement for the Brooklyn location, (c) Defendants have agreed to pay any outstanding sums due under the license agreements, and (d) Defendants attained an average of 4.3 out of 5.0 stars on Google reviews.  Moreover, for the purposes of its motion, Plaintiff concedes that it does not assert dilution or unfair trade practices against the Defendants (Plaintiff Memo of Law at fn. 5) and Plaintiff has not provided any evidence regarding consumer/public confusion.

"A successful plaintiff must demonstrate that absent interim relief it will suffer an injury that is neither remote nor speculative, but actual and imminent." *Consol. Brands, Inc. v. Mondi*, 638 F.Supp. 152, 155 (E.D.N.Y.1986).  The Second Circuit stated that "courts must not simply

presume irreparable harm. Rather, plaintiff[] must show that, on the facts of their case, the failure to issue an injunction would actually cause irreparable harm." *Salinger v. Colting,* 607 F.3d 68, 82 (2d Cir. 2010).

### D.     The Equities Favor Defendants

If the Court denies Plaintiff's request for a preliminary injunction, the Defendants will continue to use the Bravo trademark only at their Brooklyn location for the next seven months. Plaintiff will not be prejudiced by this because Defendants will be paying licensing fees to Plaintiff during this time and, as the overwhelming reviews suggests, Defendants' customers praise Bravo Pizza's food and service.  In addition, Plaintiff only recently registered their marks on the principal register on January 31, 2023.

On the other hand, if the preliminary injunction is granted, Defendants will be forced to change their entire marketing and branding strategy.  This is an extensive undertaking that requires revising Defendants' website, store signage, custom pizza boxes, napkins, advertisements, menus, etc., which Defendants maintained for more than 4 ½ years.  An injunction at this time is particularly harmful and will effectively act as a permanent injunction because there is only 7 months left on the Brooklyn license.

### E.     Plaintiff Agreed to Arbitrate its Claims

"A court deciding a motion to compel arbitration applies a standard similar to that applicable for a motion for summary judgment." *Herskovic v. Verizon Wireless*, No. 19-cv-3372, 2020 WL 1083716, at *2 (E.D.N.Y. Mar. 6, 2020).  Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Id.* at *2.  Thus, "[o]n a motion to compel arbitration, the moving party has the initial burden of showing that an agreement to arbitrate exists." *Carvant Fin. LLC v. Autoguard*

*Advantage Corp.*, 958 F. Supp. 2d. 390, 395 (E.D.N.Y. 2013).  The court must then undertake a two-step inquiry: it "must first determine whether there is a valid agreement to arbitrate between the parties. If there is, the Court must then determine whether the particular dispute falls within the scope of [the] arbitration clause." *Id.*  A valid agreement to arbitrate "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015).  *See also, LaRubInt Corp. v. Joint Stock Co. Studio Soyuzmultfilm*, No. 22-CV-4461 (HG), 2023 WL 3020564, at *2 (E.D.N.Y. Apr. 20, 2023).

Here, the Court *sua sponte* noticed the arbitration provision in the parties' written license agreement.  All parties agree that a valid agreement to arbitrate exists. Plaintiff argues, however, that the arbitration provision does not cover post-termination disputes.  We respectfully submit that Plaintiff is incorrect as a matter of law.  The arbitration provision is broad and specifically covers issues arising out of termination.  The agreement states that any "controversy, claim, or dispute arising out of or relating to this [License] Agreement or the breach, *termination*, interpretation or validity thereof" shall be arbitrated.  (Emphasis added)

Plaintiff's complaint falls squarely within the arbitration provision because it seeks *inter alia* money damages for conduct arising out of, or relating to, the License Agreement including infringement of its trademarks (1st and 2nd causes of action) and breach of the License Agreement itself (6th cause of action).  Accordingly, Plaintiff must be required to arbitrate its claims against the Defendants as a matter of law.

In the event that the Court grants Plaintiff's motion and retains jurisdiction, we respectfully request that the Court require Plaintiff to post a bond to cover Defendants' rebranding costs

including *inter alia* the cost of purchasing and maintaining a new website, store signage, custom pizza boxes, napkins, advertisements, menus, etc. *See e.g., Colonial Radio Corp. v. Colonial Television Corp.*, 78 F. Supp. 546, 554 (S.D.N.Y. 1948)(plaintiff's motion for a preliminary injunction is granted on condition that plaintiff post a bond of $25,000); *Jon Devlin Dancercise, Inc. v. Dancersize, Inc.*, 525 F. Supp. 973, 975 (S.D.N.Y. 1981)(a bond in the sum of $10,000 to be posted by the plaintiff will be imposed "and said amount is selected in view of the overwhelming evidence of plaintiff's demonstrating high probability of ultimate success in this litigation"); *Country Fare LLC v. Lucerne Farms*, No. 3:11CV722 VLB, 2011 WL 2222315, at *10–12 (D. Conn. June 7, 2011)(after a hearing, court determined that plaintiff provide security in the sum of $5,000).

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion for a preliminary injunction should be denied.

Dated: July 17, 2023
      New York, New York

               McLaughlin & Stern, LLP

               By: *Alan C. Sash*
               Alan E. Sash
               260 Madison Avenue
               New York, New York 10016
               asash@mclaughlinstern.com
               (212) 448-1100

               *Attorneys for Defendants*