UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRAVO PIZZA ENTERPRISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> YOSSEF AZIZO and KOSHER BRAVO PIZZA L.L.C., <br><br> Defendants. | **MEMORANDUM & ORDER** <br> 23-CV-04540 (HG) |

**HECTOR GONZALEZ**, United States District Judge:

There is currently in place a temporary restraining order prohibiting Defendants from using Plaintiff's various trademarks, along with any other mark or name likely to cause confusion with Plaintiff's trademarks. ECF No. 29. This order provides the Court's findings of fact and conclusions of law supporting its decision to convert that temporary restraining order into a preliminary injunction, as required by Rule 52(a)(2), and accompanies the Court's separate order defining the scope of the preliminary injunction, as required by Rule 65(d). Additionally, the Court grants Defendants' request to compel arbitration regarding Plaintiff's claim that Defendants breached the parties' written license agreement, which contains an arbitration clause, and stays litigation related to the remainder of Plaintiff's claims while that arbitration is pending. The Court declines, however, to abstain from exercising jurisdiction over Plaintiff's claims in deference to state court litigation that Plaintiff previously commenced against Defendant Azizo.

**PROCEDURAL HISTORY**

As further explained below, Plaintiff's claims arise out of Defendants' use of several of Plaintiff's trademarks at several different locations where Defendants do business. Shortly after commencing this case, Plaintiff moved for a preliminary injunction prohibiting Defendants' use of Plaintiff's trademarks. ECF No. 10. The Court held a hearing on August 3, 2023, during

which counsel for both parties appeared to reach a negotiated resolution. However, that resolution fell apart when it became apparent that representations made by Defendants' former counsel that his clients had stopped using Plaintiff's trademarks at certain locations had been inaccurate. Plaintiff therefore sought emergency injunctive relief, *see* ECF No. 23, and the Court responded by entering a temporary restraining order against Defendants' use of Plaintiff's trademarks, *see* ECF No. 25.

When Plaintiff presented evidence demonstrating that Defendants were not complying in good faith with the temporary restraining order, by using a name that was obviously likely to cause confusion with the name for Plaintiff's business, the Court entered a modified temporary restraining order. ECF No. 29. That order gave Defendants additional time to comply with the order and also expressly forbade Defendants from using any mark or name likely to cause confusion with Plaintiff's trademarks. *Id.* The Court also granted Defendants' counsel's motion to withdraw and ordered Defendant Kosher Bravo Pizza L.L.C. to find new counsel by September 15, 2023, or else the Court would likely order the entry of default against the company. ECF No. 30. The current temporary restraining order is in place until 12:00pm Eastern Time on August 30, 2023. ECF No. 29.

Plaintiff's complaint asserts several causes of action, including claims under the Lanham Act for trademark infringement related to two separate registered trademarks, false designation of origin, and trademark dilution. ECF No. 1. Plaintiff also asserts a claim for unfair trade practices under New York's General Business Law and a New York breach of contract claim based on a written license agreement between the parties. *Id.*

## **LEGAL STANDARD**

A party seeking a preliminary injunction must establish: "(1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits

of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *Conn. State Police Union v. Rovella*, 36 F.4th 54, 62 (2d Cir. 2022).[1] "[A] preliminary injunction is an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018). Instead, a preliminary injunction "should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sound Around Inc. v. Shenzhen Keenray Innovations Ltd.*, No. 22-cv-6943, 2022 WL 17811475, at *2 (E.D.N.Y. Dec. 18, 2022) (emphasis in original). "The purpose of such interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward." *Trump v. Int'l Refugee Assistance Proj.*, 582 U.S. 571, 580 (2017).

Since the parties have a written license agreement regarding Defendants' use of Plaintiff's trademarks that is due to expire in February 2024, *see* ECF No. 1-3 at 2, this case likely represents an instance, at least with respect to Plaintiff's breach of contract claim, where a preliminary injunction would "provide[] [Plaintiff] substantially all the relief [it] seeks in the litigation, and . . . cannot be meaningfully undone in the event that the enjoined party prevails at trial on the merits." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023). Under such circumstances, the party seeking a preliminary injunction, must "show[] a clear or substantial likelihood of success on the merits" and "mak[e] a strong showing of irreparable harm." *Id.*

"Where the parties have agreed to arbitrate a dispute, a district court has jurisdiction to issue a preliminary injunction to preserve the status quo pending arbitration," and in such circumstances, "[t]he standard for such an injunction is the same as for preliminary injunctions generally." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894–95 (2d Cir. 2015).

---

[1] Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

"The expectation of speedy arbitration does not absolve the district court of its responsibility to decide requests for preliminary injunctions on the merits. Nor is this duty affected by the pro-arbitration policy manifested in the [Federal Arbitration Act]." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 238 (2d Cir. 2016). Instead, "courts should consider the merits of a requested preliminary injunction even where the validity of the underlying claims will be determined in arbitration." *Id.* In this case, the arbitration clause in the parties' written license agreement expressly authorizes Plaintiff to seek injunctive relief in court. ECF No. 1-3 at 4.

## FINDINGS OF FACT

Plaintiff operates restaurants that sell pizza and other foods, with an emphasis on kosher foods, in New York, New Jersey, and Florida. ECF No. 10-2 ¶ 2. Plaintiff began using the name "Bravo Pizza" for its business in 2000 and began using the name "Bravo Kosher Pizza" in 2012. *Id.* ¶¶ 3–4. On January 31, 2023, Plaintiff registered separate trademarks for those names with the U.S. Patent and Trademark Office (the "USPTO"). ECF Nos. 1-1 & 1-2. Plaintiff also uses a logo with the name "Bravo Pizza" surrounded by exclamation points, for which Plaintiff has not received a registered trademark, but which Plaintiff has used since 2002. ECF No. 10-2 ¶ 9. Defendant Azizo is the owner of Defendant Kosher Bravo Pizza L.L.C. ECF No. 19 ¶ 1.

At an unspecified time in 2016, Plaintiff entered into an oral license agreement with Defendant Azizo permitting him to use Plaintiff's trademarks at a pizza store in Woodridge, New York, for ten weeks during the summer months, in exchange for a license fee. ECF No. 10-2 ¶ 12–13. In February 2019, Plaintiff and Defendant Azizo entered into a separate, written license agreement permitting Azizo to use Plaintiff's trademarks at a single location on Kings Highway in Brooklyn, in exchange for monthly license fees. ECF No. 1-3. Defendants operate another pizza store at that location. ECF No. 19 ¶¶ 9–10. The written license agreement contains an

arbitration clause that applies to any disputes, but the clause contains an exception that authorizes Plaintiff to seek injunctive relief in court.  ECF No. 1-3 at 4.

In December 2022, Plaintiff became aware that Defendant Azizo had begun operating a bagel store, next door to Defendants' Brooklyn pizza store, that used Plaintiff's "Bravo" name, even though such use was not authorized by the parties' oral or written license agreements.  ECF No. 10-2 ¶ 18.  On December 1, 2022, Plaintiff's attorney sent Defendant Azizo a cease-and-desist letter stating that Defendant's use of the Bravo name for his bagel store was unauthorized. ECF No. 20-1 at 13–14.  Plaintiff demanded that Defendant Azizo either stop using the Bravo name at the bagel store or negotiate a separate license agreement permitting the use of the Bravo name at that store.  *Id.*

On December 13, 2022, Plaintiff's attorney sent another letter to Defendant Azizo, informing Defendant that he had not paid the license fee required by the written agreement governing the Brooklyn pizza store for the month of December 2022.  ECF No. 20-1 at 17–18. Pursuant to the written license agreement, Plaintiff informed Defendant that he had seven days to cure the nonpayment, or else Plaintiff intended to terminate the agreement.  *Id.*  That letter also informed Defendant Azizo that he had not paid the full amount of the license fee related to the Woodridge pizza store, required by the parties' oral license, for summer 2022, and warned that Plaintiff reserved the right to file a lawsuit to collect those fees.  *Id.*

Finally, on May 24, 2023, Plaintiff's counsel sent a letter to Defendant Azizo's counsel terminating the written license agreement due to Defendant's alleged failure to cure his non-payment of license fees for the Brooklyn pizza store.  ECF No. 10-2 at 23–24.  The letter also reiterated Plaintiff's demands that Defendant stop using Plaintiff's trademarks at the Woodridge pizza store and the Brooklyn bagel store.  *Id.*  The parties' written license agreement permits a party to terminate the agreement because of another party's breach, so long as the party that has

purportedly breached the agreement receives notice and a seven-day opportunity to cure.  ECF No. 1-3 at 3.  The agreement also permits Plaintiff to terminate the agreement "for any reason upon thirty (30) days written notice" to Defendant Azizo.  *Id.*

After Plaintiff commenced this lawsuit, Defendants stopped using Plaintiff's trademarks at their Brooklyn bagel store and rebranded that store as "Yossi's Bagels."  ECF No. 19-3; ECF No. 33 at 17.  Defendant Azizo also stated in a declaration made under penalty of perjury that he had stopped using Plaintiff's trademarks at Defendants' pizza store in Woodridge.  ECF No. 19 ¶ 3.  Plaintiff's further investigation, however, revealed that statement to be false.  ECF No. 23 at 6.  It was only after Plaintiff provided photographic evidence of Defendants' continued use of Plaintiff's trademarks at the Woodridge store that Defendants ceased using Plaintiff's trademarks there and provided the Court with photographs demonstrating that Defendants had done so.  ECF No. 24-1.

Nevertheless, the Court entered the first version of its temporary restraining order shortly after the parties' submissions of these photographs, *see* ECF No. 25, because Defendants continued to use Plaintiff's trademarks at their Brooklyn pizza store, based on their argument that Plaintiff had not properly terminated the parties' written license agreement, *see* ECF No. 19 ¶¶ 12, 16.  That temporary restraining order prohibited Defendants from "intentionally us[ing] Plaintiff's Trademarks, within the view of Defendants' customers, at any . . . location at which Defendants do business."  ECF No. 25 at 3.  The order also required Defendants to "cease using Plaintiff's Trademarks on any outdoor signage or website associated with Defendants' Brooklyn Pizza Store no later than 11:59pm Eastern time on August 17, 2023."  *Id.* at 2.

However, on August 16, one day before Defendants' deadline to comply with the Court's order, Plaintiff provided the Court with photographs showing that Defendants were purporting to comply with the order at the Brooklyn pizza store by covering up Plaintiff's exclamation points

6

logo and removing a single letter from the store's sign, so that it read "Ravo Pizza."  ECF No. 27 at 3.  The name associated with Defendants' business on Google Maps had similarly changed to "Ravo Kosher Pizza."  *Id.*  In response, the Court issued a modified temporary restraining order, which specifically stated that "Defendants have not been attempting in good faith to comply with the Court's temporary restraining order."  ECF No. 29 at 2.  The modified order not only prohibited Defendants from using Plaintiff's trademarks, but also added a new prohibition against using "any other mark or name likely to cause confusion with Plaintiff's Trademarks," thereby putting Defendants on notice that using the name "Ravo" was not a permissible means of complying with the order.  *Id.* at 3.  The order extended until August 21, 2023, the deadline for Defendants to bring the Brooklyn pizza store into compliance with the order and directed Defendant Azizo to file a declaration under penalty of perjury by August 24, 2023, that included photographic evidence demonstrating that Defendants had done so.  *Id.*

In response to the Court's temporary restraining orders, Defendant Azizo filed a declaration, accompanied by photographs, which demonstrate that Defendants are purporting to comply with the temporary restraining order at the Brooklyn pizza store by using signs that say "Ravo Pizza" and "Ravo Kosher Pizza."  ECF No. 33 at 8–9.  The name associated with Defendants' store on Google Maps also remains "Ravo Kosher Pizza."  *Id.* at 10.  Defendants are similarly using the name "Ravo Bagel Express" to solicit customers who order from their Brooklyn bagel store on Uber Eats, even though the outdoor sign on that store has changed to "Yossi's Bagels."  *Id.* at 17–19.

## **DISCUSSION**

As further set forth below, Plaintiff is entitled to a preliminary injunction against Defendants' continued use of Plaintiff's trademarks.  The Court also compels arbitration on Plaintiff's breach of contract claim arising from Defendants' alleged breach of the parties'

7

written license agreement. Although the Court will stay litigation with respect to the remainder of Plaintiff's claims while the parties' arbitration is pending, the Court declines to dismiss Plaintiff's claims pursuant to the abstention doctrine established by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

## I. The Court Will Not Abstain From Considering Plaintiff's Claims

In February 2023, before Plaintiff commenced this case or sent Defendants written notice that Plaintiff was terminating the parties' written license agreement, Plaintiff commenced a lawsuit against Defendant Azizo in the Supreme Court of the State of New York, New York County. *Bravo Pizza Enters., Inc. v. Azizo*, No. 650620/2023 (Sup. Ct. N.Y. Cty. filed Feb. 1, 2023). Plaintiff asserted common law claims seeking to collect unpaid licensing fees under both the parties' oral and written license agreements. *Id.* Defendants argue that the Court should abstain from exercising jurisdiction over Plaintiff's claims in this case, in deference to the state court lawsuit, pursuant to the abstention doctrine established by the U.S. Supreme Court in *Colorado River*. ECF No. 18 at 3–5. The Court declines to do so.

To begin its *Colorado River* abstention analysis, the Court must "make a threshold determination" that this lawsuit and Plaintiff's state court lawsuit against Defendant Azizo "are parallel." *Mochary v. Bergstein*, 42 F.4th 80, 85 (2d Cir. 2022). "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Id.* Only after concluding that the two proceedings are parallel may the Court proceed to consider the following six factors:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

8

*Id.* If the Court concludes that "any such factor is facially neutral, that is a basis for retaining jurisdiction, not for yielding it." *LeChase Constr. Servs, LLC v. Argonaut Ins. Co.*, 63 F.4th 160, 173 (2d Cir. 2023). No specific factor is "is necessarily determinative," and the Court should not simply compare the number of factors that favor abstention against the number of factors that favor proceeding with the case in federal court, as though the Court were applying "a mechanical checklist." *Mochary*, 42 F.4th at 85. Finally, when weighing the factors, the Court must be mindful of the Supreme Court's instruction that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colo. River*, 424 U.S. at 817, and the Second Circuit's corresponding "insiste[nce] on a heavy presumption against abstention from the exercise of federal jurisdiction," *LeChase*, 63 F.4th at 173.

  The Court finds that the parties' federal and state court litigation are parallel since both lawsuits involve the same Plaintiff and a common Defendant, Mr. Azizo, and the dispute at issue in each case involves Defendants' use of Plaintiff's trademarks arising from the parties' license agreements. However, several factors weigh in favor of exercising jurisdiction, and the Court therefore decides not to abstain from adjudicating Plaintiff's claims. Neither case involves either court exercising jurisdiction over a *res*. Since two of Defendants' three businesses at issue in this case are located within Kings County, and none are in New York County, litigating in a federal court located in Kings County is approximately as easy, if not easier, for Defendants than litigating in state court in New York County. Although Plaintiff commenced the state court litigation first, a review of the docket for that case reflects that the state court has taken no action in response to Plaintiff's complaint, so the state court litigation has not advanced further than the parties' litigation in this Court. Finally, Plaintiff asserts federal claims under the Lanham Act in this case, but not in state court, and the Second Circuit has explained that "[w]hen the applicable substantive law is federal, abstention is disfavored." *Niagara Mohawk Power Corp. v. Hudson*

9

*River-Black River Regulating Dist.*, 673 F.3d 84, 102 (2d Cir. 2012) (reversing district court's decision to abstain pursuant to *Colorado River*).

## II.    Plaintiff Is Entitled to a Preliminary Injunction

Plaintiff has established a likelihood of succeeding on the merits of, at minimum, its claims for trademark infringement.  "A plaintiff alleging trademark infringement in violation of the Lanham Act must demonstrate that (1) it has a valid mark that is entitled to protection and that (2) the defendant's actions are likely to cause confusion with that mark."  *Hamilton Int'l Ltd. v. Vortic LLC*, 13 F.4th 264, 271 (2d Cir. 2021).  "Where a mark warrants protection under the Lanham Act, both the likelihood of success on the merits and the potential for irreparable harm in the absence of preliminary relief may be demonstrated by a showing that a significant number of consumers are likely to be misled or confused as to the source of the products in question."  *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 119 (2d Cir. 2022).  The Second Circuit has "identified a non-exhaustive list of factors for district judges to analyze when considering whether a mark's use is likely to cause confusion," which are known as the *Polaroid* factors.  *Hamilton Int'l*, 13 F.4th at 272.  Those factors are:  "[t]he strength of the plaintiff's mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the plaintiff will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers."  *RiseandShine*, 41 F.4th at 119.  "[T]he evaluation of the *Polaroid* factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins."  *Id.* at 124.

Plaintiff has established that it has valid trademarks entitled to protection because it has provided registered trademarks approved by the USPTO for both "Bravo Pizza" and "Bravo Kosher Pizza" and demonstrated Plaintiff's longstanding use of its exclamation points logo.

10

ECF No. 1-1; ECF No. 1-2; ECF No. 10-2 ¶ 9. The likelihood of confusion is high because Plaintiff's mark is inherently distinctive since the name "Bravo" by itself "does not connote any association with" pizza restaurants or kosher food. *Guru Teg Holding, Inc. v. Maharaja Farmers Market, Inc.*, No. 22-cv-1375, 2022 WL 3045038, at \*7 (E.D.N.Y. Aug. 2, 2022) (granting preliminary injunction on plaintiff's trademark infringement claim). Defendants were at one point using identical marks, invoking their purported rights under the parties' license agreements, and Defendants have now switched to using the name "Ravo Pizza," which is a nonsensical name that is clearly designed to come as close to resembling Plaintiff's trademarks without being literally identical. ECF No. 23 at 6; ECF No. 33 at 8–10. Defendants' use of Plaintiff's trademarks has also risen to the level of bad faith because Plaintiff provided Defendants a notice terminating the parties' written license agreement that the Court strongly expects an arbitrator will conclude was valid and sent Defendants multiple cease-and-desist letters. *Guru Teg Holding*, 2022 WL 3045038, at \*8 (finding bad faith where plaintiff wrote defendant "a letter warning that his use of the [m]arks would constitute trademark infringement").

Since Plaintiff and Defendants both operate restaurants that feature kosher pizza as their principal menu item, "the proximity factor weighs heavily in plaintiff's favor." *Guru Teg Holding*, 2022 WL 3045038, at \*7. Furthermore, since both parties sell the same products, the *Polaroid* factor about "bridging the gap," which "refers to the likelihood that the senior user will enter the junior user's market in the future," "is irrelevant because there is no gap to bridge." *Id.* Given the strength with which the aforementioned factors weigh in Plaintiff's favor, the Court concludes that the *Polaroid* factors as a whole weigh strongly in Plaintiff's favor and that Plaintiff is highly likely to demonstrate the confusion necessary to prove its trademark infringement claims.

Plaintiff has also established irreparable harm. Since Plaintiff has demonstrated a likelihood of success on the merits for its trademark infringement claims, Plaintiff is "entitled to a rebuttable presumption of irreparable harm" pursuant to the Trademark Modernization Act of 2020. *Guru Teg Holding*, 2022 WL 3045038, at *3–4 (citing 15 U.S.C. § 1116(a)) (granting preliminary injunction because defendant had failed to rebut presumption of irreparable harm); *see also Hope Organics LLC v. Preggo Leggings LLC*, No. 21-cv-2416, 2021 WL 5919367, at *11–12 (S.D.N.Y. Dec. 15, 2021) (granting preliminary injunction for same reason); *Colony Grill Dev., LLC v. Colony Grill, Inc.*, No. 21-2136-cv, 2022 WL 950950, at *3 (2d Cir. Mar. 30, 2022) (vacating denial of preliminary injunction on trademark claim and instructing district court that "[i]f [counterclaim plaintiff] has a likelihood of success, it gives rise to a presumption that [it] would suffer irreparable harm in the absence of an injunction"). Defendants have done nothing to rebut this presumption.

The balance of the harms favors Plaintiff because Plaintiff faces irreparable harm to its brand and goodwill if Defendants are permitted to use Plaintiff's trademarks, whereas Defendants' only conceivable injury is lost sales, which "is quantifiable and can be compensated." *Hope Organics*, 2021 WL 5919367, at *13 (finding that balance of hardships weighed in favor of plaintiff for same reason). Granting a preliminary injunction furthers the public interest because "[t]he consuming public has a protectable interest in being free from confusion, deception and mistake." *3M Co. v. CovCare, Inc.*, 537 F. Supp. 3d 385, 406 (E.D.N.Y. 2021) (granting preliminary injunction for trademark infringement claims); *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 602 F. Supp. 3d 358, 373 (E.D.N.Y. 2022) (finding that public interest weighed in favor of preliminary injunction on trademark infringement claims for same reason). Additionally, "the public interest here is served by the enforcement of the parties' lawful agreement," which required Defendants to pay Plaintiff licensing fees in order to use

12

Plaintiff's trademarks. *Benihana*, 784 F.3d at 897 (affirming grant of preliminary injunction in trademark licensing dispute).

"Courts have wide discretion on whether to require the posting of a security upon issuance of a temporary restraining order or preliminary injunction, and the amount thereof." *Chanel, Inc. v. Lin*, No. 23-cv-2004, 2023 WL 2574946, at *4 (S.D.N.Y. Mar. 20, 2023). Although Defendants have correctly asserted that rebranding their stores will entail some costs, they have not quantified those costs. *See* ECF No. 18 at 8–9; ECF No. 19 ¶¶ 10, 16. Furthermore, Defendants have not asserted any right to use Plaintiff's trademarks apart from the parties' license agreements, and the written license agreement is scheduled to expire in February 2024, *see* ECF No. 1-3 at 2, meaning that Defendants will be required to incur the cost of rebranding their stores regardless of whether Plaintiff prevails on its claims. The Court therefore is not requiring Plaintiff to post a bond in connection with the preliminary injunction. *DJ Direct, Inc. v. Margaliot*, 512 F. Supp. 3d 396, 422 (E.D.N.Y. 2021) (declining to require a bond for preliminary injunction related to trademark claims because "it has been held proper for the court to require no bond where there has been no proof of likelihood of harm").

As previously described, Defendants' attempts to comply with the Court's temporary restraining orders, particularly through Defendants' use of the name "Ravo Pizza," have not been made in good faith. *See* ECF Nos. 29, 33. Defendant Azizo also previously misrepresented Defendants' continued use of Plaintiff's trademarks at Defendants' pizza store in Woodridge in his prior declaration made under penalty of perjury. ECF No. 19. The Court therefore orders Plaintiff, on or before September 8, 2023, to file and serve a letter no longer than three pages, accompanied by any necessary exhibits, documenting Plaintiff's attorneys' fees and other costs incurred in connection with: (i) preparing Plaintiff's emergency motion for injunctive relief (ECF No. 23), motion to modify the Court's temporary restraining order (ECF No. 27), and

13

motion for sanctions (ECF No. 32); and (ii) attending the telephone conference on August 4, 2023, regarding Plaintiff's emergency motion for injunctive relief.  Defendant Azizo, or any attorney retained to represent Defendants in the interim, shall file a letter no later than September 15, 2023, explaining why the Court should not require Defendants to pay those attorneys' fees and costs to Plaintiff pursuant to the Court's civil contempt power authorized by Rule 70, 18 U.S.C. § 401(3), or the Court's inherent authority.

Finally, if Defendants are unable to remove or obstruct any use of Plaintiff's trademarks, or confusingly similar marks, including but not limited to the name "Ravo," on or before September 5, 2023, the Court will likely impose on Defendants a sanction of $250 per day for each day that Defendants fail to comply with the preliminary injunction, pursuant to the Court's civil contempt power granted by the same authorities described in the previous paragraph. Defendants shall demonstrate their compliance through photographic evidence filed on or before September 5, 2023, or else Plaintiff shall promptly thereafter submit photographic evidence demonstrating whether Defendants are in compliance.  If Defendants have not complied with the preliminary injunction by September 5, then their submission on September 15, 2023, shall explain why the daily sanction should not be imposed.  Since this daily sanction is not measured by the harm suffered by Plaintiff, and is instead designed to coerce Defendants' compliance with the preliminary injunction, any daily sanction that the Court imposes will be paid to the Clerk of Court rather than to Plaintiff.  *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 658 (2d Cir. 2004) (explaining that "[t]o the extent that [a] sanction is compensatory, the fine should be correlated with the loss incurred by" the party harmed by the contempt); *Tacuri v. Nithun Constr. Co.*, No. 14-cv-2908, 2019 WL 6914042, at *3 (E.D.N.Y. Dec. 19, 2019) (imposing fine "of $100 per day" "to be paid to the Clerk of Court").

### III. Plaintiff Must Arbitrate its Breach of Contract Claim, at Minimum, and Plaintiff's Remaining Claims Are Stayed Pending Arbitration

The parties' written license agreement contains an arbitration clause requiring that a:

> controversy, claim or dispute arising out of or relating to this Agreement or the breach, termination, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate (except at the option of [Plaintiff] for any application for injunctive relief as set forth above) shall be finally settled in arbitration in New York County, New York under the rules of the American Arbitration Association (AAA) before one arbitrator and judgment upon the award rendered may be entered in any court having jurisdiction.

ECF No. 1-3 at 4. Defendants have invoked this arbitration clause in their opposition to Plaintiff's motion for a preliminary injunction and have asked the Court to compel arbitration. ECF No. 18 at 7–9.

"In deciding whether to compel arbitration, a court must first decide whether the parties agreed to arbitrate. Only if the court concludes an agreement to arbitrate exists does it determine (1) the scope of the agreement to arbitrate; (2) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (3) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022). "Courts deciding motions to compel arbitration apply a standard similar to that applicable for a motion for summary judgment," meaning that a court can compel arbitration without a trial on the issue of arbitrability only "[i]f the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law." *Id.* As with a motion for summary judgment, the Court must "consider[] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," and must "draw all reasonable inferences in favor of the non-moving party." *Id.*

15

The parties have clearly reached an agreement to arbitrate at least some of their claims. Defendants have invoked the arbitration clause in the written license agreement, thereby demonstrating that Defendants consider the agreement valid and enforceable. ECF No. 18 at 7–9. Plaintiff presented the agreement as an exhibit to its complaint and the basis for Plaintiff's breach of contract claim, *see* ECF No. 1-3, thereby demonstrating that Plaintiff also considers the agreement valid and enforceable. In fact, Plaintiff has not disputed the enforceability of the arbitration clause and has instead simply argued that the Court is empowered to grant injunctive relief despite the arbitration clause, *see* ECF No. 20 at 7–8, which the Court has done through this order. The scope of the arbitration clause includes, at minimum, Plaintiff's claim for breach of contract based on the written license agreement. ECF No. 1 ¶¶ 78–86.

As mentioned above, the Second Circuit has instructed that "if [a] court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008); *Zachman*, 49 F.4th at 101 (describing same standard). The decision whether to stay claims which the parties did not agree to arbitrate is "left to the district court as a matter of its discretion to control its docket." *SDJ Invs., LLC v. Collector's Coffee Inc.*, No. 21-2070-cv, 2022 WL 17097231, at *2 (2d Cir. Nov. 22, 2022) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983)).

The Court concludes that staying any litigation of Plaintiff's remaining claims is appropriate. "A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims," as there is in this case, since Plaintiff's breach of contract claim is based on the same core set of facts as Plaintiff's other claims. *Kumaran v. Vision Fin. Markets, LLC*, No. 20-cv-3871, 2022 WL 17540669, at *7 (S.D.N.Y. Dec. 6, 2022) (staying claims not covered by parties' arbitration agreement while

16

arbitration was pending); *see also Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 111 (S.D.N.Y. 2017) (staying all claims where plaintiff had agreement with one defendant to arbitrate copyright infringement claims but had no such agreement with second defendant).  A stay is also warranted where "the issues decided in the arbitration are likely to have preclusive effect over some or all of the claims not subject to arbitration." *Kumaran*, 2022 WL 17540669, at *7.  Since the issue of whether Plaintiff properly terminated the parties' written license agreement will need to be decided by the arbitrator, and will likely have a significant impact on any future decision by the Court about whether Defendants were infringing on Plaintiff's trademarks, the Court finds that this consideration justifies a stay.

A stay is further warranted because the parties' written license agreement assigned to the arbitrator "the determination of the scope or applicability of [the parties'] agreement to arbitrate."  *See* ECF No. 1-3 at 4.  Staying all of Plaintiff's claims will permit the parties to dispute before the arbitrator the extent to which Plaintiff's federal and New York statutory claims may also be encompassed by the parties' agreement to arbitrate, rather than solely Plaintiff's breach of contract claim.  *See GAC Int'l LLC v. Roth Licensing LLC*, No. 15-cv-2375, 2016 WL 11507273, at *5 (E.D.N.Y. June 1, 2016) (holding that similar arbitration clause in license agreement also encompassed trademark claims under the Lanham Act); *Lapina v. Men Women N.Y. Model Mgmt. Inc.*, 86 F. Supp. 3d 277, 288 (S.D.N.Y. 2015) (explaining that "Lanham Act . . . claims have been held to be subject to arbitration").

The Court warns Plaintiff that it must diligently pursue the arbitration of whatever claims the arbitrator determines are covered by the scope of the arbitration clause in the parties' written license agreement.  Plaintiff may not simply rest on the fact that it has obtained a preliminary injunction, and rely on the Court's contempt power to enforce that preliminary injunction, rather than litigate the merits of Plaintiff's claims.  If Plaintiff fails diligently to move the parties'

17

arbitration forward, the Court will consider imposing appropriate sanctions, up to and including dismissing Plaintiff's claims for failure to prosecute, pursuant to Rule 41(b).  *See Ventoso v. Shihara*, No. 19-cv-3589, 2022 WL 19706, at *2–3 (S.D.N.Y. Jan. 3, 2022) (dismissing case for failure to prosecute after staying case pending arbitration because plaintiff failed to commence an arbitration proceeding); *Dhaliwal v. Mallinckrodt PLC*, No. 18-cv-3146, 2020 WL 5236942, at *2 (S.D.N.Y. Sept. 2, 2020) (dismissing case *sua sponte* for failure to prosecute under similar circumstances).  Conversely, if Defendants refuse to participate in the arbitration or unnecessarily delay its progress, the Court will consider imposing appropriate sanctions on Defendants.

## **CONCLUSION**

For the reasons set forth above, the Court GRANTS Plaintiff's motion for a preliminary injunction.  ECF No. 10.  The Court also GRANTS Defendants' request to compel arbitration and stays litigation related to all of Plaintiff's claims while the arbitration is pending.  Plaintiff shall serve a copy of this order on Defendants no later than September 1, 2023, and shall file a letter no later than September 6, 2023, describing the means by which Plaintiff accomplished that service.

Defendants shall demonstrate their compliance with the preliminary injunction through photographic evidence filed on or before September 5, 2023, or else Plaintiff shall promptly thereafter submit photographic evidence demonstrating whether Defendants are in compliance.  Plaintiff shall submit documentation of the attorneys' fees and other costs further described in this order on or before September 8, 2023.  Defendants shall file their submission explaining why the Court should not impose sanctions, including a daily monetary sanction for any noncompliance with the preliminary injunction, on or before September 15, 2023.  The parties shall file a joint letter every 90 days from the date of this order, and within 14 days of receiving a

final decision from their arbitrator, describing for the Court the status of the parties' arbitration proceedings.

SO ORDERED.

                                               */s/ Hector Gonzalez*
                                               HECTOR GONZALEZ
                                               United States District Judge

Dated: Brooklyn, New York
        August 29, 2023